*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0084P (6th Cir.)
File Name: 00a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　　Nos. 98-1047/1762

DAVID CHARLES HUNT,
　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 95-50041—Paul V. Gadola, District Judge.

Argued: December 6, 1999

Decided and Filed: March 9, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,
District Judge.[*]

---

### COUNSEL

**ARGUED:** Kenneth R. Sasse, FEDERAL DEFENDER'S
OFFICE, Flint, Michigan, for Appellant. Mark C. Jones,
ASSISTANT UNITED STATES ATTORNEY, Flint,

---

[*] The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

Michigan, for Appellee. **ON BRIEF:** Kenneth R. Sasse, FEDERAL DEFENDER'S OFFICE, Flint, Michigan, for Appellant. Mark C. Jones, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee.

—————————

## OPINION

—————————

JAMES G. CARR, District Judge. This is an appeal from a criminal sentence imposed on defendant by the United States District Court for the Eastern District of Michigan. Defendant pled guilty to conspiracy to distribute cocaine, distribution of cocaine and felony possession of a firearm. (J.A. at 26).

Before sentencing, defendant moved for an *in camera* hearing to determine whether, as he claimed, the government violated his plea agreement's written terms. (J.A. at 36-44). Specifically, defendant alleged that the government breached his plea agreement by failing to: 1) release him on bond so that he could actively assist the government in other investigations, 2) interview him a series of times (i.e., more than twice), thereby thwarting his ability to cooperate with law enforcement officials, and 3) administer a lie detector test to determine if he provided truthful information during two interviews. In the alternative to a hearing, defendant requested leave to withdraw his guilty plea. (*Id.*).

The district court refused to hold a hearing, finding that the plain and unambiguous terms of the plea agreement had not been breached. (J.A. at 79-82). Further, the district court would not allow defendant to withdraw his plea because he had not satisfied his burden of withdrawal under Rule 32 of the Federal Rules of Criminal Procedure. (J.A. at 83-85).

In a motion for reconsideration, defendant raised a new basis for a hearing. He argued that the government made oral promises to him while negotiating the plea agreement. Those promises, he claimed, had not been fulfilled. The district

*States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). "If a motion to a withdraw a plea of guilty or *nolo contendere* is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. Pro. 32(e). The defendant has the burden of proving that withdrawal of the plea is justified. *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996). In deciding whether a defendant has stated a fair and just reason to allow withdrawal of a plea, the factors to be considered are:

> 1) the amount of time that elapsed between the plea and the motion to withdraw it; 2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; 3) whether the defendant has asserted or maintained his innocence; 4) the circumstances underlying the entry of the guilty plea; 5) the defendant's nature and background; 6) the degree to which the defendant has had prior experience with the criminal justice system; and 7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

The district court applied the preceding factors and determined, within its discretion, that withdrawal was inappropriate. (J.A. at 84-85). The district court did not abuse its discretion given: 1) the length of time of time between entry of defendant's plea and his motion for withdrawal (almost one year), 2) the absence of any breach of the plea agreement, 3) defendant's confession of guilt, 4) the careful reading of the plea agreement's terms to defendant at the plea hearing, and 5) defendant's criminal history. (*Id.*).

## CONCLUSION

For the foregoing reasons, the opinion of the district court is AFFIRMED.

Further, bad faith on the part of the government is not the standard of review in downward departure cases. We previously have held that a hearing is not needed unless the government's refusal to recommend a downward departure "was based on an unconstitutional motive." *United States v. Bagnoli*, 7 F.3d 90, 92 (6th Cir. 1993) (citing *Wade v. United States*, 504 U.S. 181 (1992)). No threshold showing of unconstitutional motive has been made here.

Indeed, the district court demonstrated why the government had fully complied with the terms of the plea agreement. (J.A. at 79-82). In its order, the district court noted that the plain language of the plea agreement made clear that the government did not have any obligation to release defendant on bond, interview defendant any set number of times, or administer a lie detector test. (J.A. at 79-82). A review of the plea agreement confirms this. (J.A. at 56-66). Thus, it was permissible to interview defendant twice for his cooperation, and, when the government concluded substantial assistance was not forthcoming, decline to recommend a downward departure. (J.A. at 62). Nothing about the government's conduct raises constitutional concerns.

### III. Plea Validity

Defendant argues that the district court should have held a hearing to consider whether he entered into his guilty plea voluntarily and, thus, validly.

Defendant, however, never moved the district court to hold a hearing to determine if his plea was valid. Rather, he asked, as an alternative to a hearing, that his plea be withdrawn based on its alleged invalidity. That alternative request was denied because defendant failed to satisfy his burden of withdrawal under Rule 32 of the Federal Rules of Criminal Procedure. (J.A. at 83-85). Thus, the only question appropriately presented is whether the district court misapplied Rule 32.

Denial of a defendant's motion to withdraw his guilty plea under Rule 32 is reviewed for an abuse of discretion. *United*

court denied defendant's motion for reconsideration because, among other things, the plea agreement contained an integration clause, restricting its terms to those written within its four corners. (J.A. at 100).

Defendant argues here that the district court erred in not allowing a hearing. He claims a hearing was necessary to: 1) determine whether the government breached its oral promises; 2) assess whether the government failed to provide him with a good faith opportunity to cooperate; and 3) establish whether his guilty plea was valid. (Defendant's Brief at 11-17).

For the following reasons, we AFFIRM the judgment of the district court.

### BACKGROUND

A grand jury in the Eastern District of Michigan returned an indictment against defendant for seven counts of conspiracy to distribute cocaine, distribution of cocaine, use of a firearm during the commission of a drug offense, possession of a firearm by a felon, and possession of a firearm with an obliterated serial number. (J.A. at 18-24). On May 28, 1996, defendant pled guilty to three of the seven counts and forfeited two vehicles as part of his Rule 11 plea agreement. (J.A. at 26).

Defendant's plea agreement contains three clauses that are relevant here. First, it contains an integration clause restricting its terms to those written within its four corners:

*No Other Terms.* This agreement incorporates the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant.

(J.A. at 34). Second, the plea agreement contains a cooperation clause, obligating defendant to assist the government in other investigations:

*Truthful Information and Assistance.* Defendant promises to provide truthful and complete information to the United States Attorney's office and to other law enforcement agencies, including a full debriefing and truthful testimony at all proceedings, . . . . Defendant agrees to be available for interviews in preparation of all testimony. Defendant further agrees to submit, upon request, to government- administered polygraph examinations to verify defendant's full and truthful testimony.

(J.A. at 30-31). Third, the plea agreement contains a clause requiring the government to inform the district court of defendant's substantial assistance in other investigations and, if appropriate, recommend a downward departure from the sentencing guidelines:

*Substantial Assistance Determination.* Upon the government's determination that defendant's cooperation amounts to substantial assistance in the investigation of others, the government will advise the court of the defendant's cooperation at sentencing, and, if appropriate, request the court to depart downward from the applicable sentencing range. The government reserves the right to make the sole determination as to whether and when defendant has provided substantial assistance.

(J.A. at 31).

On May 29, 1996, the district court held a plea hearing in accordance with Rule 11. At the hearing, the district court reviewed the details of the plea agreement with defendant. (J.A. at 115-119). Defendant was asked whether he understood that the plea agreement was a fully integrated document:

**THE COURT:** Paragraph nine says *this is a complete Agreement* between yourself and the Government, and *there have been no other promises made to you.* Do you understand that is in this document?

reliance on the written plea agreement. *Id.* But we emphasized that an integration clause "would *ordinarily* prevent any assertion that there were side deals or promises." *Id.* (emphasis added).

Here, there are no circumstances justifying a departure from the ordinary rule set forth in *Peavy*. Unlike the defendant in *Peavy*, defendant in this case has filed no affidavit attesting to a side agreement with the government. And the government, though it has filed no supporting affidavits of its own, denies that any such oral agreement exists. (Government's Brief at 11) ("[T]here were no agreements whatsoever which were not contained in the Rule 11 [plea agreement]."). Given this denial, the integration clause, and defendant's failure to file an affidavit, the district court was correct in finding that no hearing was necessary.

Defendant attempts to distinguish *Peavy* on the basis that it was a post-sentencing challenge to a plea agreement pursuant to 28 U.S.C. § 2255. (Defendant's Brief at 12-13). But the fact that the challenge here occurred before sentencing is unremarkable. Once the government enters into a Rule 11 plea agreement containing an integration clause, the result ordinarily should be final and immune from collateral attack, whether such attack occurs before or after sentencing.

## II. Bad Faith

Defendant claims the government frustrated his ability to cooperate and, thus, qualify for a downward departure from the sentencing guidelines. He further alleges that the government acted in bad faith, which he was not given an opportunity to prove at a hearing. (Defendant's Brief at 14-16).

Defendant's allegation of bad faith is raised for the first time on appeal. He never alleged bad faith to the district court. Rather, he simply maintained that the government violated the plea agreement, without making any claim that the government was improperly motivated. Defendant's argument is fatally flawed for this reason alone.

### I. Oral Promises

In his motion for reconsideration, defendant claimed that the government made two oral promises to him that had not been fulfilled. First, he claimed the government promised him a polygraph test, which it never administered. (J.A. at 88). Second, he claimed the government promised not to confiscate two of his vehicles if the polygraph results showed that he had not used those vehicles in the commission of a drug offense, but then confiscated them without giving him a chance to take the polygraph. (*Id.*). Defendant explained that these unfulfilled promises were not included in the written plea agreement for his protection (*id.*), yet were intended to be binding on the government. Defendant repeats this argument here. (Defendant's Brief at 11-13).

An integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself. *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994). In *Peavy*, the defendant pled guilty to distribution of cocaine. His Rule 11 plea agreement contained an integration clause. After sentencing, he claimed to have had an oral arrangement with the government to reduce his sentence if he cooperated in an ongoing FBI investigation. He further claimed the government failed to live up to its end of the bargain after he provided the cooperation requested. Accordingly, defendant sought a hearing at which to contest his guilty plea. Defendant's attorney, who was with him at the time the government's alleged promise was made, filed an affidavit with the district court attesting to the existence of an oral promise.

The government in *Peavy* conceded that it had entered into a oral promise with the defendant, and that the promise was omitted from the plea agreement. But the government disputed the terms of the oral promise.

A hearing was necessary in *Peavy* because both sides acknowledged an oral promise and the government placed no

**DEFENDANT:** Yes. . . .

. . .

**THE COURT:** Has anyone directly or indirectly made any promises . . . other than the terms of this [p]lea [a]greement to get you to plead guilty to these charges?

**DEFENDANT:** No.

(J.A. at 118-119) (emphasis added). The district court also confirmed that defendant understood that the government alone, in its discretion, would determine whether he had cooperated in other investigations and, thus, was eligible for a recommendation of downward departure:

**THE COURT:** All right. Paragraph 3B says that *if the Government determines that your cooperation has amounted to substantial assistance in the investigation of other people*, the Government will tell me about your cooperation at the time of sentencing, and if the Government deems it appropriate, the Government will request that I depart downward from the applicable sentencing range for you under the sentencing guidelines. You understand that, sir?

**DEFENDANT:** Yes.

**THE COURT:** It goes on to say that *the Government has the right to make the sole determination as to whether you have provided that cooperation and substantial assistance* and as to whether you have provided it. You understand that, sir?

**DEFENDANT:** Yes.

(J.A. at 116-17) (emphasis added). Following this questioning, the district court found that the plea agreement satisfied Rule 11. (J.A. at 118).

Defendant's sentencing was set for September 12, 1996, and then moved to January 9, 1997. (J.A. at 121). Between the plea hearing and January 9, 1997, law enforcement officials interviewed defendant twice. (J.A. at 38). During those interviews, the government claims defendant was uncooperative, and that he did not proffer any information regarding his knowledge of illegal activities. (Government's Brief at 6). Defendant claims he "fully cooperated" during the interviews, "providing sensitive information . . . that clearly would aide in seeking independent indictments." (J.A. at 38).

Because the government found the interviews to be unproductive, it adjourned the January 9th sentencing to provide defendant with another chance to cooperate. (J.A. at 81). Confirming by letter the adjournment with defendant's lawyer, the government requested a written proffer from defendant:

> As you know, I agreed, with some reluctance, to an adjournment . . . on January 9, 1997. I am writing to advise you of my position as to the issue of cooperation.
>
> I have previously written to you about my concern with the fact that Mr. Hunt has been reluctant to cooperate. Indeed, my investigating officers have expressed to me their views that there is no point in a further proffer from him.
>
> As such, at this point, I am respectfully asking that you meet with Mr. Hunt and prepare a *specific* and *detailed* explanation of his knowledge of illegal activities and his proposed cooperation. I will submit it to the investigating officers. If we feel that it justifies a re-examination of the cooperation issue, we will advise you.

(J.A. at 67-68) (emphasis original).

Defendant never accepted the government's invitation to submit a written proffer. (Government's Brief at 7).

In December 1997, nearly a year after the adjournment, the district court reconvened the parties for sentencing. Defendant's lawyer asked for another delay of sentencing and an extension of time to cooperate. (J.A. at 120-21). But the district court denied this request:

> **THE COURT:** . . . I'm aware that we were back then on January 9th, 1997 for sentencing and then there was – I believe the matter was adjourned so that your client [defendant] could have an opportunity to provide some cooperation to the government. And so now almost a year has passes since then . . . . Here we are again, and you want more time? I'm not disposed to give it. . . .
>
> . . .
>
> [W]ithin one year after sentencing if Mr. Hunt can furnish some substantial assistance during that period, the government, within one year, can come back and make a motion to reduce the sentence. We're all aware of that, but I don't see any reason why at this point . . . I should again adjourn this sentencing so that Mr. Hunt can cooperate with the government.

(J.A. at 121-22).

The district court sentenced defendant to 136 months in prison (J.A. at 102-03), and this appeal followed.

### DISCUSSION

Defendant asserts that the district court erred in not allowing a hearing. He claims a hearing was necessary for three reasons: first, to determine whether the government breached its oral promises; second, to assess whether the government failed to provide him with a good faith opportunity to cooperate; and third, to establish whether his guilty plea was valid. (Defendant's Brief at 11-17). None of these contentions has merit.