**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clyde Daniel WESLEY, Jr.,**
**Defendant–Appellant.**

No. 99–6359.

United States Court of Appeals,
Sixth Circuit.

April 5, 2001.

Before BOGGS and MOORE, Circuit Judges; BELL, District Judge.*

PER CURIAM.

Defendant Clyde Wesley appeals his conviction and sentence following a guilty plea to conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana and meth-amphetamine. Defendant appeals on the grounds that he was fraudulently induced to enter into his plea agreement with the government. We agree with the lower court's finding that the government did not fraudulently induce defendant to enter into the plea agreement. Affirmed.

Defendant was a marijuana trafficker with a supplier in Kentucky. He located a cheaper supplier in Arizona, and in October 1998 made the first of three trips to Tucson to purchase marijuana. On his third trip in November 1998, defendant took a driver along. After purchasing drugs and a .45–caliber handgun, defendant flew back to Kentucky. The driver, however, was apprehended by Texas police, and subsequently agreed to deliver the drugs to defendant in a successful sting operation.

Defendant was charged in a four-count indictment, and pled guilty pursuant to a plea agreement. As part of the plea agreement the government promised to consider making a motion for a downward departure if, in the government's opinion, the defendant was able to provide substantial assistance in the government's prosecution of a third person.

In the portion of the agreement at the center of the dispute, the government agreed to:

consider making a motion pursuant to Section 5K1.1 ... stating the extent to which defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. The defendant understands that the making of any such motion by the United States is at the sole discretion of the United States and is neither a right of the defendant nor an obligation of the United States under this agreement and as such is not a material condition of this agreement. *App.* at 34–35.

■ Defendant argues that "the government breached its duty to give Appellant Wesley the opportunity to provide substantial assistance and earn a departure" from the sentencing guidelines.[1] Defendant was interviewed by the government one time—before the signing of the plea agreement. The government did not interview defendant following the agreement, and subsequently did not make a motion for downward departure. Defendant argues that the actions of the government constitute fraud because it never intended to interview defendant, and only used the downward departure promise to induce defendant to plead.

Defendant's argument is supported by neither the contractual language nor the facts in the case.

■ Prosecutors generally cannot be compelled to offer a downward departure

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. *See Appellant's Brief,* at 5.

if they can demonstrate that their actions were made in good faith, are consistent with the principles of contract law, and the defendant makes a substantial threshold showing. The only occasion for our court to remand a case involving a failure to make a motion based on substantial assistance is when the government's refusal to recommend the departure is based on an unconstitutional motive. *See U.S. v. Hunt,* 205 F.3d 931, 936 (6th Cir.2000).

Defendant agrees that under the *Hunt* standard, defendant would not be entitled to relief if he were merely alleging that the government breached the agreement. Therefore, defendant attempts to distinguish this case from *Hunt* by asserting that the government fraudulently induced him to enter a guilty plea on the return promise that he would be eligible for a downward departure motion should he render substantial assistance.

Nevertheless, the facts in this case and *Hunt* are sufficiently similar to require that the principles enunciated in *Hunt* be applied in this case as well. In *Hunt,* the defendant agreed to plead guilty to three of seven counts for, inter alia, conspiracy to distribute cocaine. In a plea agreement reading almost identical to the one in the case before us, the government agreed to consider whether the defendant's cooperation amounted to substantial assistance. The government held two interviews with the defendant and concluded that substantial assistance would not be forthcoming. Despite further entreaties from the defendant, the government refused to grant another opportunity. Defendant then alleged that the government had frustrated his ability to cooperate. *See Hunt,* 205 F.3d at 932.

This Court found that the government had neither breached its agreement nor acted in bad faith in *Hunt. Hunt,* 205 F.3d at 936. In *Hunt* we said that "the plain language of the plea agreement made clear that the government did not have any obligation to ... interview defendant any set number of times." *Hunt,* 205 F.3d at 936.

The same analysis applies here. The plain language of the agreement as well as defendant's statements at the plea hearing show that the government had no obligation to interview defendant further.

█ Whether to extend an opportunity to defendant to cooperate more fully was at the "sole discretion" of the government. The language of the plea agreement explicitly gives the government the discretion to pursue the conditions necessary for it to move for a downward departure. The plea agreement did not require the government to meet with defendant at all. The government's agreement to consider making a motion for downward departure based on any substantial assistance by defendant is not an offer creating the power of acceptance in defendant. Plea agreements are subject to an analysis of the rights and duties of the parties similar to the law of contracts. Each party should receive the benefit of his bargain. *See U.S. v. McQueen,* 108 F.3d 64 (4th Cir.1997). Here, defendant received exactly what he bargained for—three concessions by the government and a promise to consider making a motion for downward departure.

█ Most important, perhaps, is the evidence of Petitioner's understanding of what he was receiving as part of the bargain at the plea hearing. To determine whether a plea agreement was breached by the government, we look to what was reasonably understood by the defendant when he entered his guilty plea. *See U.S. v. Carr,* 170 F.3d 572, 575 (6th Cir.1999). The record indicates that when the plea was entered defendant clearly understood that the promise to consider a downward departure created no obligation on the

part of the government. When the plea was entered before the District Court, the government repeated that the motion for a reduction would be at the government's sole discretion, and "should not be a condition of the agreement."[2] Defendant confirmed that the government accurately summarized the plea agreement. The Court explicitly advised Wesley that he could not count on receiving a substantial assistance departure.

COURT: There was some talk about motions being made which could reduce your sentence below ten years. You [sic] got to recognize there are a few difficulties with that one. They don't have to make the motion and, two, I don't have to grant it if it is made. Do you understand that?

THE DEFENDANT: Yes, sir.

COURT: And if they don't make a motion, there's nothing you can do about that. And if I don't grant it if it is made, you can appeal that but there's pretty broad discretion about granting such a motion.... I could grant the motion and then only reduce the sentence a year. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, it's not something you can count on, I guess, is what I'm saying.

THE DEFENDANT: Yes, sir.[3]

Defendant protests that *Hunt* is differentiated from the present case because in *Hunt* the defendant did have two interviews with the government, while in the case before us defendant had only one. Although that specific fact is true, the principle is identical in both cases: both defendants wished the government to afford them a further opportunity to provide substantial assistance. Just as in *Hunt*, in this case the plea agreement places no obligation upon the government to meet with defendant once, twice, or at all. The making of any such motion was to be at the sole discretion of the government; it created neither a right in the defendant nor an obligation in the government; and it was not a material condition of the agreement.[4]

■ Defendant also argues that the promise to consider a motion was illusory and fraudulent because it induced defendant to enter into the plea agreement without the agreement being binding on the government. Defendant's argument would succeed if the promise to consider were the only consideration contained in the agreement. But there were three other binding promises the government made and kept: to recommend a sentence at the low end of the applicable range; to recommend a fine within the applicable range; and to not oppose a reduction of three levels, for acceptance of responsibility, in the final offense level.[5] The government fulfilled these. Because these are sufficient consideration for defendant's entering the plea agreement, defendant cannot make his case merely by asserting that the promise to consider was the "primary inducement" relied upon to enter into the agreement.[6]

Furthermore, for the government's promise to consider a motion to be regarded as a fraudulent inducement to defendant, the promise would have to be worded in such a way that a reasonable person

---

2. *Change of Plea Hearing Transcript*, App. at 53 (March 28, 2000).

3. See Appendix, at 54–55.

4. See Plea Agreement, at 4–5 (April 19, 1999).

5. See Plea Agreement, at 4 (April 19, 1999).

6. *See Appellant's Reply Brief*, at 4 (May 12, 2000).

would infer that an offer had been made creating the power of acceptance in putative offeree. No such reasonable inference could be made in this case.

Accordingly, we agree with the ruling by the lower court that the government had neither a duty nor a contractual obligation to allow Wesley further opportunity to earn a downward departure in the sentencing guidelines. AFFIRMED.