RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0335P (6th Cir.)
File Name: 04a0335p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

KENNETH C. SMITH,
  *Petitioner-Appellant,*

  *v.*

JIMMY STEGALL, Warden,
  *Respondent-Appellee.*

No. 02-2441

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72959—Robert H. Cleland, District Judge.

Argued: August 4, 2004

Decided and Filed: September 30, 2004

Before: CLAY and GILMAN, Circuit Judges; MATIA,
Chief District Judge.[*]

_____

### COUNSEL

**ARGUED:** Jeffrey M. Brandt, ROBINSON & BRANDT,
Cincinnati, Ohio, for Appellant. William C. Campbell,

_____

[*] The Honorable Paul R. Matia, Chief United States District Judge for
the Northern District of Ohio, sitting by designation.

1

---

OFFICE OF THE ATTORNEY GENERAL, Lansing,
Michigan, for Appellee. **ON BRIEF:** Jeffrey M. Brandt,
ROBINSON & BRANDT, Cincinnati, Ohio, for Appellant.
William C. Campbell, OFFICE OF THE ATTORNEY
GENERAL, Lansing, Michigan, for Appellee.

GILMAN, J., delivered the opinion of the court, in which
MATIA, D. J., joined. CLAY, J. (pp. 13-17), delivered a
separate dissenting opinion.

_____

### OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Kenneth C.
Smith fatally shot Gary DeLano Brown in June of 1989.
After his first-degree murder conviction was reversed on
procedural grounds, Smith elected to plead guilty in a
Michigan state court to one count of second-degree murder
rather than face a retrial for first-degree murder. The state
promised in the plea agreement not to recommend a sentence
of life imprisonment.

At sentencing, the prosecution literally complied with the
plea agreement, but did request that Smith be imprisoned for
a term of 70 to 100 years. In addition, when asked by the
court if any of the victim's family members wished to speak,
the prosecutor replied that they wanted Smith to receive a life
sentence. Defense counsel made no objection to the
prosecutor's statements. Smith was sentenced by the state
trial court to a term of 35 to 55 years in prison plus an
additional 2 years for the use of a firearm in connection with
the crime.

After exhausting his remedies in the Michigan state courts,
Smith filed a petition for a writ of habeas corpus in the district
court. He contended that the state had effectively
recommended a life sentence, thereby breaching the plea

agreement and violating Smith's right to the due process of law under the Fourteenth Amendment to the United States Constitution. The district court denied the petition. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

A jury convicted Smith of first-degree murder in August of 1990. The conviction was reversed on appeal because Smith was found to have been denied his Sixth Amendment right to a jury selected from a fair cross section of the community. Instead of going to trial a second time, Smith elected to plead guilty to one count each of second-degree murder, possession of a firearm during the commission of a felony, and the commission of a second felony offense by a habitual offender. The plea agreement, as summarized by the state trial court, provided that "[t]he People [would be] free to make whatever recommendation they want at sentencing, except they do agree they will not recommend life imprisonment as the sentence in this case."

In its sentencing brief to the state trial court, the prosecution stated: "Justice demands that the Defendant be sentenced for as long as possible under the law. The people respectfully request a sentence of 70 to 100 years imprisonment as a second offender." At the subsequent sentencing hearing, the state repeated its request for a term of 70 to 100 years in prison. The trial court also asked the prosecutor whether any member of the victim's family wanted to address the court, to which the prosecutor replied: "No, Your Honor. For the record, I spoke to the victim's family . . . . They've informed me that they wish the Defendant to receive life imprisonment." Defense counsel did not object to any of the prosecutor's statements as being in violation of the plea agreement.

The state trial court initially sentenced Smith to a term of 35 years to life in prison on the second-degree murder count plus an additional 2 years for the firearm violation. Two days later, the court conducted a resentencing hearing at which it altered the sentence on the second-degree murder count to a term of 35 to 55 years in prison because Michigan law does not allow a sentence of 35 years to life. At the resentencing hearing, the prosecutor reiterated his request that Smith receive a sentence of 70 to 100 years in prison. Defense counsel once again did not object to this recommendation as being in violation of the plea agreement.

### B. Procedural background

Smith appealed to the Michigan Court of Appeals, contending for the first time that the plea agreement was breached when the prosecutor recommended a sentence "for as long as possible under the law," urged a specific sentence of 70 to 100 years, and stated that the victim's family wanted Smith to receive a life sentence. The appellate court rejected this argument, reasoning as follows:

> In the plea bargain, the prosecution merely agreed not to recommend the specific sentence of "life." The plea bargain placed no restrictions on "term of years" sentence recommendations, even though a long term of years sentence may be just as harsh, if not harsher, than a parolable "life" sentence. *People v. Carson*, . . . 560 N.W.2d 657 (1996). Although one may question the value of having the prosecution promise not to recommend a "life" sentence while leaving the prosecution free to recommend an equally harsh or harsher long term of years sentence, the fact remains that the defendant received everything he bargained for.
>
> Nor did the plea bargain restrict the prosecution's authority to advise the court of the wishes of the victim's family. . . . The prosecution did not indicate any concurrence with the family's request for a sentence of

"life." To the contrary, the prosecution recommended a sentence of seventy to one hundred years' imprisonment.

*People v. Smith*, No. 207090, 1999 WL 33438154, at *1 (Mich. Ct. App. July 27, 1999) (per curiam) (unpublished) (citations omitted). The Michigan Supreme Court denied Smith's motion for leave to appeal in a one-sentence order with no analysis.

Smith then filed a motion for post-conviction relief with the state trial court. The motion was denied. Leave to appeal the trial court's decision was later denied by both the Michigan Court of Appeals and the Michigan Supreme Court.

Smith's next legal step was to file a petition for a writ of habeas corpus with the district court in August of 2001. In his petition, Smith raised four claims, including his argument that the prosecution breached the plea agreement. The magistrate judge assigned to the case recommended that the petition be denied. In November of 2002, the district court adopted the magistrate judge's Report and Recommendation and denied Smith's petition on all four claims. The district court subsequently granted Smith a Certificate of Appealability on the sole ground that the prosecutor had breached the plea agreement. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's legal conclusions, but will set aside its findings of fact only if the findings are clearly erroneous. *Lott v. Coyle*, 261 F.3d 594, 606 (6th Cir. 2001). The standard of review for state-court determinations, on the other hand, is dictated by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254(d). AEDPA applies in the present case because Smith filed his habeas petition in August of 2001, well after the Act's effective date of April 24, 1996. *See*

*Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997) (noting that AEDPA applies to habeas petitions filed after the Act's effective date). The Act provides in pertinent part as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). In contrast, an "unreasonable application" of federal law occurs where a "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also id.* at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was *objectively* unreasonable.") (emphasis added).

Under AEDPA, "clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. "As is dictated by the statute, we may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law." *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001) (quotation marks omitted).

The decisions of the lower federal courts may be considered, however, for two purposes. First, "the decisions of the United States Courts of Appeals may be informative to the extent we have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). We are also bound by any prior Sixth Circuit decisions concluding that federal law on a particular issue has been "clearly established" by certain holdings of the Supreme Court. *See* Rule 206(c) of the Sixth Circuit Rules ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.").

## B.  The Michigan Court of Appeals's application of clearly established federal law was not objectively unreasonable

Smith does not contend that the Michigan Court of Appeals "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or . . . decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). His sole contention is that the Michigan Court of

Appeals's "application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The leading Supreme Court case regarding a state's breach of a plea agreement is *Santobello v. New York*, 404 U.S 257 (1975). In *Santobello*, the defendant was originally charged with two gambling offenses. He agreed to plead guilty to a single, lesser-included offense. The state of New York, in return, agreed to the guilty plea and promised not to make a sentencing recommendation. At the sentencing hearing, however, the prosecutor (who had been assigned to the case after the plea agreement was reached) recommended that the defendant receive the maximum one-year sentence. *Id.* at 259.

The Supreme Court vacated the defendant's sentence, holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. Despite the trial judge's statement at sentencing that he had not been influenced by the prosecutor's recommendation, the Court rejected the argument that the breach of the plea agreement was harmless. *Id.* at 262-63.

Although *Santobello* discusses the consequences of a broken plea agreement, the case does not amplify the parameters of what constitutes a breach. Various circuit court decisions, however, have addressed the issue since *Santobello* was decided. This court has held that "[p]lea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991). One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent

with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990) (citing *United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir. 1986)).

In the present case, the state promised Smith not to recommend a life sentence. No promises were made, however, that limited the prosecution's ability to recommend any particular term of years. Michigan law provides that a defendant convicted of second-degree murder "shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." Mich. Comp. Laws § 750.317. Because the state promised only that it would not recommend a life sentence, one reasonable interpretation of the plea agreement is that it left the prosecutor free to recommend a statutorily permissible sentence of "any term of years," which would include a term of 70 to 100 years.

Smith contends, however, that the state went beyond recommending a particular term of years by arguing that "[j]ustice demands that the Defendant be sentenced for as long as possible under the law." According to Smith, that assertion was the functional equivalent of asking the court to impose a life sentence.

Smith's argument, however, is based upon the assumption that a sentence of parolable life is more severe than a sentence for a term of years. But the Michigan Court of Appeals has explained that a defendant sentenced to a term of years is not eligible for parole until he or she has served the lower number (meaning that a defendant sentenced to a term of 70 to 100 years would not be eligible for parole until the 70 years had lapsed), whereas a defendant sentenced to parolable life is eligible for parole in 10 or 15 years, depending on when the offense was committed. *People v. Carson*, 560 N.W.2d 657, 662-63 (Mich. Ct. App. 1997). A sentence of 70 to 100 years

in prison, therefore, could actually result in a longer term of imprisonment than a parolable life sentence.

This quirk in Michigan sentencing law supports the conclusion that the prosecutor believed that a sentence of 70 to 100 years in prison was the longest possible sentence that Smith could receive. In other words, the prosecutor was not asking that the trial court sentence Smith *either* for a term of 70 to 100 years *or* "for as long as possible under the law." Instead, the prosecutor was recommending a term of 70 to 100 years because he believed that that *was* the longest possible sentence.

Further support for this conclusion comes from the fact that, at the sentencing hearing, the state recommended only a term of years without reference to its written statement that Smith should be sentenced for as long as possible. This suggests that the prosecution did not intend the statement in its sentencing brief to be interpreted as a recommendation of a life sentence.

Smith contends, however, that even if the prosecutor did not violate the literal terms of the plea agreement, the recommended sentence of 70 to 100 years was inconsistent with "[t]he parties' reasonable expectation, and certainly Smith and his counsel's reasonable expectation, . . . that the prosecutor would not request a sentence that was the highest possible or long enough that Smith would spend the rest of his life in prison." But this argument ignores the principle of contract interpretation, discussed above, that "[u]nless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Smith is therefore asking us to ignore the plain language of the plea agreement and instead to enforce his own unwritten, subjective intent. This is not a permissible method of contract interpretation.

Even if we could properly consider evidence of the parties' subjective intent, Smith's allegation that the sentencing recommendation by the prosecutor conflicted with Smith's subjective understanding of the plea agreement is questionable. The state recommended a term of 70 to 100 years in its sentencing brief, at the sentencing hearing, and yet again at the resentencing hearing. Yet Smith never objected on the ground that this recommendation violated the plea agreement, which suggests that the prosecution's recommendation was not contrary to his subjective expectations.

He also objects to the fact that the state informed the sentencing court that the victim's family wanted Smith to receive a life sentence. Under Michigan law, however, family members have the right to make their views known to the sentencing court. *See* Mich. Comp. Laws § 780.765. The prosecutor did not volunteer to speak on behalf on the victim's family, but was simply responding to a question by the trial court. Moreover, as the Michigan Court of Appeals stated,

> the plea bargain [did not] restrict the prosecution's authority to advise the court of the wishes of the victim's family. . . . The prosecution did not indicate any concurrence with the family's request for a sentence of "life." To the contrary, the prosecution recommended a sentence of seventy to one hundred years' imprisonment.

*People v. Smith*, 1999 WL 33438154, at *1; *see also Clement v. McCaughtry*, No. 92-4154, 1993 WL 513886 (7th Cir. Dec. 9, 1993) (unpublished) (holding that the victim's statement that the court should impose a life sentence did not violate the prosecutor's agreement not to recommend a sentence of any specific number of years, where the prosecutor did not comment on the victim's statement or endorse it in any way). The Michigan Court of Appeals reasonably concluded that the response of the prosecutor to

the trial court's question did not constitute a sentencing recommendation.

Ultimately, we must decide whether the Michigan Court of Appeals's conclusion that the state did not breach the plea agreement was objectively unreasonable. That court applied a standard principle of contract interpretation in focusing exclusively on the unambiguous language of the plea agreement. This court has followed the same approach when interpreting plea agreements, which suggests that the Michigan Court of Appeals's methodology was not unreasonable. *See United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990). Whether we would have interpreted the plea agreement differently if we had been in the shoes of the Michigan Court of Appeals is irrelevant. A writ of habeas corpus may issue only if the state court's application of clearly established federal law was objectively unreasonable. We conclude that it was not.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

**DISSENT**

CLAY, Circuit Judge, dissenting. It is well-established that "the law does not permit a criminal defendant to bargain away his constitutional rights without receiving in return … the benefit of his bargain …." *Bercheny v. Johnson*, 633 F.2d 473, 476 (6th Cir. 1980); *accord United States v. Blummet*, 786 F.2d 720, 722 (6th Cir. 1986)). *See also United States v. Wesley*, 13 Fed. Appx. 257, 259 (6th Cir. 2001) ("Plea agreements are subject to an analysis of the rights and duties of the parties similar to the law of contracts. Each party should receive the benefit of his bargain.") (citing *United States v. McQueen*, 108 F.3d 64 (4th Cir. 1997)); *accord United States v. Taylor*, 68 Fed. Appx. 614, 615 (6th Cir. 2003). Today's majority opinion condones this prohibited practice.

Like any defendant who enters a plea bargain, Kenneth Smith expected to benefit from pleading guilty to second degree murder as opposed to facing re-trial and a possible conviction for first degree murder. Under Michigan law, a person guilty of first degree murder must be punished by "imprisonment for life," MICH. COMP. LAWS. § 750.316(1), which means a mandatory life sentence without the possibility of parole. *See People v. Hall*, 242 N.W. 2d 377, 380 (Mich. 1976) (interpreting a conviction for first degree murder under MICH. COMP. LAWS. § 750.316 as requiring a "mandatory life sentence (without possibility of parole …")). By contrast, a person guilty of second degree murder must be punished by "imprisonment in the state prison for life[] or any term of years," MICH. COMP. LAWS. § 750.317, and may be eligible for parole. *E.g.*, *People v. Bazzetta*, No. 237756, 2003 WL 133060, at *3-*4 (Mich. Ct. App. Jan. 3, 2003). Thus, Smith reasonably understood that the benefit of pleading guilty to a lesser charge would be (assuming the court followed the prosecutor's recommendation) avoidance of prison for life

without the possibility of parole. *See United States v. Carr*, 170 F.3d 572, 575 (6th Cir. 1999) ("In determining whether a plea agreement has been broken, courts look to what was reasonably understood by the defendant when he entered his plea of guilty.") (citing *United States v. Mandell*, 905 F.2d 970, 972 (6th Cir. 1990)). In return for the prosecutor's assurance not to recommend that he spend the rest of his days in prison with no hope of release, Smith would relinquish his constitutional right to insist on a jury trial, as well as related constitutional rights, and the possibility of an acquittal.

The State also expected to benefit from Smith's plea to second degree murder. It would avoid the prospect of spending considerable time and resources on a trial with no guarantee of a conviction. In return, the State would relinquish its right to seek a sentence of life imprisonment without parole, which would flow from a first degree murder conviction.

In violation of the parties' bargain, the State recommended life imprisonment without parole when it recommended a 70 to 100 year sentence. As the majority notes, in Michigan, a defendant receiving a 70 year sentence generally is not eligible for parole until 70 years of the sentence have elapsed. Smith, who was 21 years old at the time of the offense, likely would be over 90 years old by the time he would be eligible for parole from a 70 to 100 year sentence. It is highly doubtful that he would survive to that age in prison, thereby revealing the true nature of the State's recommendation – life imprisonment without parole. *See People v. Carson*, 560 N.W.2d 657, 677 (Mich. Ct. App. 1996) ("[A] sentence of a lengthy term of years that may prevent the Parole Board from assuming jurisdiction, thus effectively constituting a life term without parole, is one of the most severe sentences a defendant may receive.").

The majority correctly notes that a sentence of 70 to 100 years in prison could result in a longer term of imprisonment than a *parolable* life sentence. I am puzzled, however, as to

how this "quirk in Michigan sentencing law" undermines Smith's argument. If indeed Smith would have been better off with a parolable life sentence than a lengthy term of years, the prosecutor's promise not to recommend life imprisonment in exchange for his guilty plea was utterly worthless. Certainly, Smith did not reasonably expect that he had relinquished his constitutional rights in exchange for no benefit whatsoever. Moreover, the relevant comparison is not between the potential sentences Smith faced for second degree murder, but between (a) the 70 to 100 year sentence for second degree murder that the prosecution recommended and (b) the *nonparolable* life sentence for first degree murder that Smith reasonably expected to avoid by pleading guilty, i.e. a sentence that would require him to spend the rest of his life behind bars. The fact that a sentence of parolable life actually could result in less prison time than a 70-year term shows that Smith was not concerned about a sentence of parolable life *per se*, but any mandatory prison sentence that would extend to the end of his natural life. The most straightforward way to address this concern was to have the prosecution agree not to recommend imprisonment for life, which is precisely the promise the prosecutor failed to fulfill.

I disagree that Smith's failure to object to the prosecutor's sentencing recommendation at the time of sentencing suggests that the recommendation was not contrary to Smith's subjective expectations of the plea agreement. A more plausible interpretation of Smith's silence – or, rather, that of his trial counsel – is that his attorney was constitutionally ineffective. Because Smith requested, but was denied, a certificate of appealability on this issue, I do not believe it is appropriate to hold his attorney's failures against him on this appeal.

To conclude, the majority ignores the parties' reasonable expectations behind the plea agreement in favor of a formalistic interpretation that ignores context and common sense. True, as a purely literal matter, the State complied with the agreement "not recommend life imprisonment as the

sentence" because the prosecutor did not use the word "life" in her sentencing recommendation. This literal compliance with the agreement, however, did not translate into substantive compliance. Smith relinquished his constitutional rights attendant to a trial by jury in reliance on the promise that the State would not recommend that he spend the rest of his natural life behind bars. As shown above, the State did not honor this promise, denying Smith the benefit of his bargain. I, therefore, would grant Smith's habeas corpus petition because the Michigan courts' denial of Smith's application for post-conviction relief involved an objectively unreasonable application of *Santobello v. New York*, 404 U.S. 257 (1975), which held that a prosecutor must fulfill promises that induce a guilty plea. *Id.* at 262.

I also have grave doubts about whether the prosecutor breached the plea agreement when she disclosed the victim's family's wishes that Smith receive a life sentence. At Smith's sentencing, the court asked the prosecutor, "To your knowledge, is anyone else here to talk about sentencing?" The prosecutor appropriately responded, "No, Your Honor." But then she gratuitously added:

> For the record, I spoke to the victim's family, his mother, Cora Bennett; and his brother, Fred Brown; and, sister, Dolores Brown. They've informed me that they wish the Defendant to receive life imprisonment. They did not want to be here today. It was too painful for them to have to go through this a second time 8 years after their brother was, and son was murdered. They did not want to see the Defendant again, so they are not here.

Because the court had asked only whether anyone else was present to talk about the sentencing, the prosecutor did not "simply respond[] to a question by the trial court," as the majority states. If that were so, the prosecutor would have gone silent after uttering the words "No, Your Honor."

The fact that family members had the right to make their views known to the sentencing court did not give the prosecutor license to voice their desire for a life sentence. It was incumbent on the family to appear at Smith's sentencing, which they elected not to do, or to appoint another person to speak on their behalf. MICH. COMP. LAWS § 780.765. Even assuming that the prosecutor could have been the family's appointed spokesperson, the prosecutor should have explicitly advised the court that, pursuant to the plea agreement, the State was not recommending a life sentence.

The danger of today's ruling is that it will encourage creative prosecutors, contractually bound to recommending lower sentences, to advocate higher sentences by proxy. By attributing the impermissible recommendation to a third party, such as a victim's family member, the prosecutor can achieve surreptitiously what it cannot do so directly. When a plea agreement constrains a prosecutor's sentencing recommendation, clearly the better practice is for the prosecutor to affirmatively disassociate herself or himself from the recommendations of other parties who are not similarly constrained.