Jeffrey A. MORNINGSTAR, Petitioner,

v.

Steve HANEY, Warden, Northpoint Training Center, Respondent.

Civil No. 07–105–ART.

United States District Court,
E.D. Kentucky,
Southern Division,
Pikeville.

July 21, 2008.

Jeffrey A. Morningstar, Burgin, KY, pro se.

Michael A. Nickles, Attorney General's Office, Frankfort, KY, for Respondent.

## MEMORANDUM OPINION AND ORDER

AMUL R. THAPAR, District Judge.

Jeffrey A. Morningstar filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. R. 1. According to local practice, the matter was referred to United States Magistrate Judge Edward B. Atkins for the preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Judge Atkins recommended that Morningstar's Petition be denied, R. 16, and Morningstar objects to that recommendation, R. 18.[1] Having reviewed Morningstar's objections de novo, the Court agrees with Judge Atkins's recommendations. Accordingly, the Court denies Morningstar's Petition.

## I. BACKGROUND

Neither party challenged Judge Atkins's description of the procedural background in the Report and Recommendation, and, thus, the Court relies on it throughout this Opinion. A grand jury indicted Morningstar on four counts of second degree rape based on allegations that he engaged in sexual intercourse with "C.C.," who was under fourteen years of age. R. 16 at 2. C.C. and her mother moved in with Morningstar in 2002 when C.C. was 12 years old. *Id.* According to C.C., Morningstar raped her repeatedly in their home and once in the back of his Nissan Pathfinder in June and July of 2002. *Id.* C.C. later disclosed the rapes to her aunt, who contacted the Kentucky State Police. *Id.*

Morningstar pled not guilty to the charges and was tried before a jury in Pike Circuit Court. *Id.* The jury found Morningstar guilty on all four counts. *Id.* In accordance with the jury's recommendation, the trial court sentenced Morningstar to five years for each of the four counts, with the sentences running consecutively. *Id.* Following his conviction, Morningstar appealed to the Kentucky Supreme Court, raising two issues: (1) that the trial court violated his constitutional right to confront adverse witnesses by improperly applying Kentucky Rule of Evidence 412, Kentucky's rape shield law, and (2) that the trial court erred in not allowing into evidence a letter written by the victim in which she accused other men of molesting her. *Id.*; *Morningstar v. Commonwealth,* No. 2005–SC–000894–MR, 2007 WL 189020, at *1 (Ky. Jan. 25, 2007)

---

1. Morningstar filed his objections twice, R. 18 & 19. They are the same, though.

(unpublished). The Kentucky Supreme Court found both issues without merit and affirmed his conviction in a unanimous opinion. *Morningstar*, 2007 WL 189020, at \*6.

■ On May 11, 2007, Morningstar, acting pro se, filed a Petition for Writ of Habeas Corpus in this Court.[2] R. 1. He raised the same two issues as he did in his appeal to the Kentucky Supreme Court. *Id.* at 5–6. Additionally, Morningstar raised a sufficiency-of-the-evidence claim in connection with the trial court's failure to admit C.C.'s letter by arguing there was insufficient evidence without the letter. R. 1, Memo. of Facts at 15–16. In contrast, in his direct appeal to the Kentucky Supreme Court, he argued only that the failure to admit the letter violated the Kentucky Rules of Evidence. R. 16 at 5–6. The Commonwealth filed an answer to Morningstar's Petition, R. 9, to which Morningstar filed a reply, R. 12.

Subsequently, Judge Atkins issued his Report and Recommendation in which he recommended that Morningstar's Petition be denied and that the case be dismissed with prejudice. R. 16 at 17. Judge Atkins concluded that Morningstar's Sixth Amendment rights were not violated when the trial court limited his cross-examination of C.C. because the excluded questions concerned C.C.'s general character and credibility rather than her bias, preju-

dice, or motive. *Id.* at 12–14. With respect to the second alleged error, Judge Atkins first noted that defense counsel had not moved to admit the letter written by C.C. *Id.* at 16. As a result, the trial court never denied admission of the letter into evidence, rather the court did not allow the jury to view the letter after the jury requested to see it during deliberations. *Id.* at 15. Addressing the merits of this claim, Judge Atkins concluded that a reasonable trier of fact could find guilt beyond a reasonable doubt based on the record evidence even with the absence of the letter and that any violation of state law with respect to C.C.'s letter did not warrant habeas relief. *Id.* at 16–17. Judge Atkins also denied Morningstar's request for an evidentiary hearing. *Id.* at 3.

Morningstar filed an objection to Judge Atkins's Report and Recommendation raising the following issues:

(1) The questions excluded on his cross-examination of C.C. were protected by the Sixth Amendment. R. 18 at 2–5.

(2) The trial court's failure to allow the jury to review the letter during deliberations is the type of state-law violation that warrants habeas relief. *Id.* at 5–6.

(3) There was insufficient evidence to convict him.[3] *Id.* at 6–7.

---

2.  Because Morningstar is proceeding pro se, his pleadings are held to a less stringent standard than those prepared by an attorney. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

3.  Morningstar actually tied his sufficiency-of-the-evidence objection to his claim that the trial court erred in failing to admit the letter in which C.C. accused other men of molesting her by arguing there was insufficient evidence without the letter. R. 1, Memo. of Facts at 15–16. Such an argument, however, lacks merit because a sufficiency-of-the-evidence

analysis tests only the evidence admitted. *See Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."). Evidence not admitted—such as the letter—thus plays no part in determining whether there was sufficient evidence to support Morningstar's conviction. Because pro se pleadings are held to less stringent standards than those prepared by attorneys, the Court construes

(4) An evidentiary hearing is required. *Id.* at 1–2.

A district court must make a de novo determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the "statute does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection," *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and as such "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings," *id.* at 150, 106 S.Ct. 466.

## II. CONFRONTATION CLAUSE

### A. Background Specific to Morningstar's Sixth Amendment Claim

■ Morningstar's objection to Judge Atkins's Report and Recommendation regarding his Sixth Amendment confrontation rights revolves around the restrictions imposed by the trial court on C.C.'s cross-examination. On direct examination, the prosecution asked C.C. whether she was concerned about getting pregnant as a result of the rapes, and she responded that she was. R. 16 at 9. On cross-examination, defense counsel's first question was, "[y]ou say you were worried about getting pregnant?" *Id.* C.C. responded in the affirmative. *Id.* Defense counsel then asked, "[i]n

fact, you did get pregnant, did you not?" *Id.* Before C.C. could respond, the prosecution objected. *Id.* Defense counsel indicated that he had a letter written by C.C. in which she claimed that she was pregnant, and he argued that any questions regarding the pregnancy and letter were permissible methods of impeachment. *Id.* The prosecution argued that questioning the victim about a pregnancy that occurred after the rapes had concluded would violate Kentucky's rape shield law. *Id.* at 9–10. The trial court declared a recess to consider the matter further. *Id.* at 10. After the recess, the trial court ruled that defense counsel's line of questioning was impermissible under KY. R. EVID. 412. *Id.* Because questions about the pregnancy had been asked in front of the jury, the prosecution advised the court that the parties had agreed on a way to resolve the issue. *Id.* As part of this arrangement, the prosecution moved for C.C.'s letter not to be admitted into evidence or referred to in front of the jury. *Id.* Defense counsel did not object to the motion, but he expressly reserved his right to question the victim about the letter on avowal.[4] *Id.*

When the trial resumed, Morningstar's counsel asked C.C., "[h]ave you ever told anyone that you were pregnant?" *Id.* C.C. responded that she had. *Id.* Morningstar's counsel then asked, "[d]id you tell [them] it was Mr. Morningstar?" *Id.* (second alteration in original). C.C. responded that she did not tell anyone that Morningstar had impregnated her. *Id.*

---

Morningstar's claim as challenging the sufficiency of the evidence separate from the alleged state-law error of failing to admit C.C.'s letter. In sum, while Morningstar argued that the trial court erred in not admitting C.C.'s letter for two reasons—state evidence law and sufficiency of the evidence-for the benefit of Morningstar the Court construes his sufficiency-of-the-evidence claim as a standalone claim.

**4.** Testimony by avowal is "a procedure by which excluded evidence is presented outside of the jury's presence and becomes a part of the record for appellate review." *Crane v. Sowders*, 889 F.2d 715, 716 (6th Cir.1989). Avowal testimony is the equivalent of an offer of proof under the Federal Rules of Evidence. *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 Fed.Appx. 914, 920 n. 6 (6th Cir.2004) (unpublished).

On avowal, C.C. testified that any letters she wrote about her pregnancy fears were written a year or two after the rapes occurred. *Id.* C.C. also testified that she wrote she was afraid that someone other than Morningstar had impregnated her and again testified that she never told anyone Morningstar had impregnated her. *Id.*

### B. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■■■ A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court's decision. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner. *Id.* at 409–10, 120 S.Ct. 1495. Though only Supreme Court case law is relevant in determining what federal law is "clearly established," the decisions of the United States Courts of Appeals may be informative to the extent the circuit courts have already reviewed and interpreted the relevant Supreme Court case law to determine whether the Court has clearly established a legal principle or right. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir.2003).

### C. Morningstar's Sixth Amendment Rights

■■■ The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. The right to confrontation "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316, 94 S.Ct. 1105. Indeed, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* at 315–16, 94 S.Ct. 1105 (quotation omitted). At the same time, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

■■■ Interpreting the Supreme Court precedent regarding the Confrontation Clause, the Sixth Circuit has noted,

[T]he Supreme Court has "distinguished between a 'general attack' on the credibility of a witness—in which the cross-examiner intends to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in this testimony"—and a more particular attack on credibility "directed toward revealing possible biases,

prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Lewis v. Wilkinson,* 307 F.3d 413, 419 (6th Cir.2002) (quoting *Boggs v. Collins,* 226 F.3d 728, 736 (6th Cir.2000)). Under the Sixth Amendment, questions on cross-examination that are aimed at revealing motive, bias, or prejudice of a witness must be allowed, but questions that relate only to a general attack on the credibility of a witness can be limited. *See Boggs,* 226 F.3d at 740 ("[T]he Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.... Under *Davis* and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias, or prejudice of a witness/accuser.") (emphasis in original).

■ Judge Atkins concluded that the restrictions imposed by the trial court on C.C.'s cross-examination did not violate the Sixth Amendment because the questions concerned C.C.'s general character and credibility rather than her motive, bias, or prejudice. R. 16 at 12–14. In his objection to Judge Atkins's Report and Recommendation, Morningstar argues that the Sixth Amendment protected the excluded questions because they were aimed at exposing C.C.'s bias and motive. R. 18 at 3.

Examining the direct and cross-examinations of C.C., as described above, reveals no Sixth Amendment violation because the Court agrees with Judge Atkins that any questions about C.C.'s pregnancy fears concerned her general character and credibility and not her motive, bias, or prejudice. The questions excluded by the trial court, but asked by Morningstar's counsel on avowal, related to letters C.C. had written one to two years after the rapes occurred. R. 16 at 10. It is not apparent to the Court how questions regarding C.C.'s fears of impregnation by someone other than Morningstar one to two years after the rapes occurred relate to her motive or bias as a witness against Morningstar. As Judge Atkins noted, even the reasons put forward by Morningstar demonstrate the excluded questions focused on C.C.'s general character and not her motive or bias against Morningstar. *Id.* at 13. In his reply brief in support of his Petition, Morningstar stated, "[the letters regarding C.C.'s pregnancy] would have showed, or proven, 1) The victim's propensity to fabricate; 2) **The victim's character, or lack thereof;** and 3) The victim's contradictions, which would have raised questions of doubt to any reasonable jury." R. 12 at 3 (emphasis added). Similarly, in his objection to Judge Atkins's Report and Recommendation, Morningstar argued, "[t]he truthfulness of the victim, the victim's motive, and **the victim's character** are all essential elements of Petitioner's Defense, as well as the claim against the Petitioner." R. 18 at 4 (emphasis added).

To the extent the excluded questions could bear on C.C.'s bias, prejudice, or motive, the jury had sufficient information regarding C.C.'s pregnancy fears to assess these factors. In *Boggs,* the Sixth Circuit stated that if a trial court improperly limited cross-examination from which a jury could have assessed a witness's bias, prejudice, or motive to testify, a court must "assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive." *Boggs,* 226 F.3d at 739. Here, based on the agreement between the prosecution and the defense, defense counsel asked C.C. on cross-examination both whether she had ever told anyone that she was pregnant and whether she had told anybody that Morningstar im-

pregnated her. The excluded questions asked on avowal regarding C.C.'s fears of pregnancy and the letters she wrote concerning those fears add minimal information to what the jury already had heard on cross-examination. As a result, the jury had sufficient information regarding this subject to assess any bias, prejudice, or motive that could result.

The Court is aware of Sixth Circuit decisions subsequent to *Boggs* that have called into question the distinction between an attack on a witness's general credibility and an attack directed toward revealing bias, prejudice, or motive for purposes of the Sixth Amendment. *See Hargrave v. McKee,* 248 Fed.Appx. 718, 727 (6th Cir. 2007) (unpublished) (stating that the Sixth Circuit had "cast considerable doubt" on *Boggs'* distinction between an attack on general credibility and an attack regarding bias, prejudice, or motive); *Vasquez v. Jones,* 496 F.3d 564, 573–74 (6th Cir.2007) (noting that *Boggs* addressed the special context of application of a rape-shield statute and concluding that *"Boggs* is better seen as a case about the court's broad discretion to limit the scope of cross-examination to prevent undue harassment and the like"). Even though these decisions do not repudiate the distinction between general credibility and bias, prejudice, or motive and did recognize the unique context of rape-shield statutes, they arguably suggest it may be inappropriate for this Court to rest its holding that Morningstar's Sixth Amendment rights were not violated on the basis that the excluded testimony went only to C.C.'s general character.

As a result and in an abundance of caution, the Court also analyzes Morningstar's Sixth Amendment objection with reference to the reasonableness standard set forth in *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986): "trial judges retain wide latitude

insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

Under this standard, the Court finds that the trial court's restrictions on Morningstar's cross-examination of C.C. were reasonable in light of the information Morningstar sought to obtain and the questions he was allowed to ask. Here, Morningstar's counsel was able to ask C.C. on cross-examination whether she was worried about getting pregnant, whether she had told other people she thought she was pregnant, and whether she told anyone she thought the father was Morningstar. R. 16 at 9–10. The testimony on avowal that was excluded—C.C.'s testimony that she wrote the letters about her pregnancy fears one to two years after the rapes and that she was afraid she was impregnated by someone other than Morningstar, *id.* at 10—added very little to the testimony already obtained on cross-examination and largely was repetitive of it. Such testimony appears to have minimal relevance other than to demonstrate that C.C. engaged in other sexual behavior.

■ "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original). The Court concludes that Morningstar did in fact have an opportunity for effective cross-examination in spite of the limitations imposed by the trial court; therefore, the Kentucky Supreme Court's decision upholding the trial court's limitations on Morningstar's cross-examination of C.C.

was not contrary to or an unreasonable application of clearly established federal law.

## III. ERROR OF STATE LAW IN FAILING TO ADMIT THE LETTER

### A. Background Specific to the Letter

Morningstar's second objection to Judge Atkins's Report and Recommendation originates with the trial court's refusal to allow the jury to view during deliberations a letter obtained from proceedings before the Pike County Family Court in which C.C. accused other men of molesting her. Both the Kentucky Supreme Court in its opinion and Judge Atkins in his Report and Recommendation described the factual background for this claim. As neither party challenged or disputed their descriptions, the Court will rely on them here.

As part of his case-in-chief, Morningstar re-called C.C. to the stand. R. 16 at 14. Defense counsel asked her whether she had ever been molested by anyone other than Morningstar. *Id.* C.C. testified that no one else had molested her. *Morningstar v. Commonwealth*, No. 2005–SC–000894–MR, 2007 WL 189020, at *5 (Ky. Jan. 25, 2007) (unpublished). C.C. also testified that she had been told that her father had molested her, but later was told that he had not in fact molested her. *Id.* She further denied that her former step-father and his uncle had molested her. *Id.* Defense counsel then asked C.C. whether she had written a letter to Pike Family Court Judge Thompson claiming that she had been molested by anyone other than Morningstar, to which the prosecution objected on the basis that it had not been provided with the letter in a timely basis. R. 16 at 14. The judge dismissed the jury to discuss the issue with the parties. *Id.* During this time, the trial judge noted that he was not inclined to admit the letter. *Id.* At the request of the prosecution, the judge declared a brief recess to allow the prosecution to review the letter and talk to C.C. about it. *Id.* at 15.

When the trial resumed, Morningstar's counsel questioned the victim about the contents of the letter, specifically whether she had ever accused her father, former step-father, and stepfather's uncle of molesting her. *Id.* C.C. responded that her aunt had drafted the content of the letter in which she accused them of molesting her because she wanted C.C. to be removed from her mother's custody. *Id.* C.C. testified that she copied the letter in her own handwriting and signed it, but that the accusations were not true. *Id.* Defense counsel never moved to admit the letter into evidence or to admit avowal testimony to authenticate the document and tender it to the trial court as an avowal exhibit. *Morningstar*, 2007 WL 189020, at *5.

During closing arguments, Morningstar's counsel recounted C.C.'s testimony regarding the false accusations in the letter. Referencing the letter, defense counsel stated, "if she would lie to [Judge Thompson], she would lie to you." R. 16 at 15 (alteration in original). Shortly after beginning deliberations, the jury returned to court and asked to see the letter itself. *Id.* The trial judge told them that the letter was not in evidence and ordered them to return to deliberations. *Id.*

### B. Procedural Default

In his Petition, Morningstar argued that failure to admit the letter violated KY. R. EVID. 404. R. 1, Memo. of Facts at 12–14. As Judge Atkins noted, this claim was procedurally defaulted because the Kentucky Supreme Court disposed of it on procedural grounds—namely that the trial court's alleged error of failing to admit the letter was not preserved for its review because Morningstar's counsel did not

move to admit the letter. R. 16 at 4; *see also Harris v. Reed,* 489 U.S. 255, 260–61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (stating that procedural default "has been applied routinely to state decisions forfeiting federal claims for violation of state procedural rules") (citations omitted). Judge Atkins found that the Commonwealth had waived Morningstar's procedural default by failing to raise it in its brief and, therefore, proceeded to address the merits of this claim. R. 16 at 4 (citing *White v. Mitchell,* 431 F.3d 517, 524 (6th Cir.2005)).

The Court views the Commonwealth's discussion of procedural default in its Answer to Morningstar's Petition as sufficiently raising the issue so as to avoid waiver. *See* R. 9 at 20–24 (discussing procedural default). The Commonwealth did not object to the Report and Recommendation, however, which generally results in waiver of any objections. *Spencer v. Bouchard,* 449 F.3d 721, 724 (6th Cir. 2006) (stating that a party who fails to object in a timely manner to a magistrate's recommendations of which the party had notice is "deemed to waive review of the district court's adoption of the magistrate judge's recommendations"). Whether waiver also applies here where the Commonwealth obtained the result it wanted—the magistrate's recommendation to dismiss the Petition—though not necessarily for the reasons it wanted-on the merits versus procedural default—may be debatable. Because the merits of Morningstar's claim that the trial court violated state evidence law in failing to admit the letter do not entitle him to habeas relief, the Court need not resolve this question.

## C. Standard of Review

Unlike Morningstar's Confrontation Clause claim, the standard of review set forth in § 2254 does not apply to his claim that the trial court's failure to admit the letter violated KY. R. EVID. 404. Section 2254 applies only when a claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Here, because the Kentucky Supreme Court disposed of this claim on procedural grounds by holding that the issue was not preserved for its review, the court did not address the claim's merits. Normally, Morningstar's procedural default would preclude this Court from reviewing it in his Petition. *See Howard v. Bouchard,* 405 F.3d 459, 475 (6th Cir.2005) (stating that procedural default "precludes federal courts from reviewing claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement"). But, as just discussed, the Court will address the merits of this claim based on the circumstances of this case.

■ In situations such as this where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a petitioner's claim de novo. *Id.* at 467 ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims de novo."); *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.2003) (reviewing habeas petitioner's sufficiency-of-the-evidence claim de novo where the state courts had considered the admissibility of the evidence but not the sufficiency of the evidence); *Pennington v. Jones,* No. 05–71976, 2006 WL 322474, at *2 (E.D.Mich. Feb. 10, 2006) (unpublished) (reviewing habeas petitioner's claim de novo where he raised it for the first time in his petition).

## D. Merits of Morningstar's Claim that the Trial Court Violated the Kentucky Rules of Evidence

■ Judge Atkins concluded that any violation of Kentucky evidence law in fail-

ing to admit the letter was not severe enough to warrant habeas relief. R. 16 at 16–17. Morningstar objected to this conclusion. R. 18 at 5, 7.

■ Questions of state law are not reviewable in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Morningstar instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 68, 112 S.Ct. 475 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, the Sixth Circuit has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

But that is not the case here. Even assuming the trial court erred by not allowing the jury to see the letter itself during deliberations, that error did not render Morningstar's trial fundamentally unfair where the contents of the letter were put in front of the jury through defense counsel's direct examination of C.C. and reinforced in his closing argument such that "defense counsel effectively impeached C.C.'s testimony when he read C.C.'s allegations from the letter into evidence...." *Morningstar*, 2007 WL 189020, at *6.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. Exhaustion and Procedural Default

■ As discussed, the Court construes Morningstar's Petition as raising a claim that the proof against him was constitutionally insufficient. R. 1, Memo. of Facts at 14–17. Judge Atkins noted that Morningstar did not raise this claim in his direct appeal to the Kentucky Supreme Court; rather, Morningstar only asserted a violation of KY. R. EVID. 404 and raised the constitutional claim for the first time in his Petition. R. 16 at 4–6. For this reason, Judge Atkins concluded that Morningstar had not exhausted his state remedies for the constitutional claim because he did not fairly present it to the state courts. *Id.* Judge Atkins addressed the merits of the claim, however, because a court may consider a petition containing an unexhausted claim when "the court determines that the petition must be denied in its entirety." *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir.2000); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Court views Morningstar's failure to raise his sufficiency-of-the-evidence claim in the state courts as raising issues of procedural default, not just exhaustion. A motion to vacate Morningstar's sentence under KY. R.CRIM. P. 11.42 is "limited to issues that were not and could not be raised on direct appeal." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006); *Sanborn v. Commonwealth*, 975 S.W.2d 905, 909 (Ky.1998) (same). Moreover, "[i]nsufficiency of the evidence to support his conviction is not a ground for relief in an RCr 11.42 proceeding." *Newberry v. Commonwealth*, 451 S.W.2d 670,

671 (Ky.1970); *Harris v. Commonwealth,* 441 S.W.2d 143, 144 (Ky.1969) ("Insufficiency of evidence is not a ground for relief authorized by RCr 11.42."). Morningstar's inability to assert his sufficiency-of-the-evidence claim in a motion under KY. R. CRIM. P. 11.42—both because he could have raised this claim in his direct appeal to the Kentucky Supreme Court and because such claims cannot be raised in KY. R. CRIM. P. 11.42 motions—means this claim is procedurally defaulted. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("There is no dispute that this state court remedy—a petition for leave to appeal to the Illinois Supreme Court—is no longer available to Boerckel; the time for filing such a petition has long passed. Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.") (citation omitted); *Ramsey v. Deuth,* No. 06–213, 2007 WL 594705, at *12 (E.D.Ky. Feb. 20, 2007) (unpublished) ("Since petitioner's claim that there was insufficient evidence to support his First Degree PFO conviction was not raised on direct appeal and may not be properly raised for the first time in an RCr 11.42 motion, it has been procedurally defaulted.").

The unavailability of a motion to vacate his sentence pursuant to KY. R. CRIM. P. 11.42 not only means Morningstar's sufficiency-of-the-evidence claim is procedurally defaulted, but also that it is exhausted. In situations such as this, the doctrines of exhaustion and procedural default largely merge. *Gray v. Netherland,* 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (stating that a petitioner's claims are exhausted if it is clear that his claims are procedurally barred under state law); *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims are now procedurally barred under Pennsylvania law."); *Franklin v. Johnson,* 290 F.3d 1223, 1231 (9th Cir.2002) ("If a petitioner failed to present his claims in state court and can no longer raise them through any state procedure, state remedies are no longer available, and are thus exhausted."); *Baker v. Corcoran,* 220 F.3d 276, 288 (4th Cir.2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."); *Hannah v. Conley,* 49 F.3d 1193, 1195–96 (6th Cir.1995) ("If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal.").

As with Morningstar's claim of a violation of state evidentiary law, however, an analysis of the merits of his sufficiency-of-the-evidence claim demonstrates he is not entitled to habeas relief. Consequently, even though this claim is procedurally defaulted, the Court will proceed to address it on the merits.

**B. Standard of Review**

The Court will review Morningstar's sufficiency-of-the-evidence claim de novo for the same reasons such a review is warranted for the alleged violation of the Kentucky Rules of Evidence, as discussed above.

## C. Merits of Morningstar's Sufficiency–of–the–Evidence Claim

In assessing whether there is sufficient evidence to support Morningstar's conviction, the Court must "determine whether, after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *McKenzie*, 326 F.3d at 727 (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). Here, Morningstar was convicted of four counts of second degree rape. R. 16 at 1. Under Kentucky law, second degree rape occurs when a person eighteen years old or more engages in sexual intercourse with another person less than fourteen years old. Ky.Rev.Stat. § 510.050(1). There was ample evidence to support Morningstar's conviction under this statute.

As an initial matter, nothing in the record suggests there is a dispute that Morningstar was eighteen years old or more and that C.C. was younger than fourteen years old at the time the rapes occurred. As to whether Morningstar engaged in sexual intercourse with C.C., testimony by C.C. that Morningstar raped her as well as physical evidence consistent with this testimony provide sufficient evidence to satisfy the standard set forth in *Jackson*.

C.C. testified that Morningstar raped her repeatedly in the home she shared with her mother and Morningstar. *Morningstar*, 2007 WL 189020, at *1. C.C. also testified that Morningstar raped her one time in the back of his Nissan Pathfinder. *Id.* Regarding the rape in Morningstar's Pathfinder, "C.C. alleged that Morningstar had sexual intercourse with her while she was lying on a pink and white blanket in the back of the vehicle. At the time, she was having her menstrual period, and he ejaculated on her stomach. He used a blue and white blanket to clean the ejaculate from her stomach." *Id.* The pink and white blanket and the blue and white blanket were tested for blood, semen, and saliva. *Id.* Multiple semen stains and human blood were found on the pink and white blanket, and one of the semen stains and the blood stain were submitted for DNA testing. *Id.* The testing revealed the blood on this blanket was C.C.'s, but the semen was not Morningstar's. *Id.* As for the blue and white blanket, multiple semen stains were identified, and one of them was submitted for DNA testing. *Id.* DNA testing revealed that the semen on this blanket belonged to Morningstar. *Id.* Thus, the physical evidence was consistent with C.C.'s testimony because C.C's blood was found on the blanket she laid on during the rape and Morningstar's semen was found on the blanket he used to clean his ejaculate from C.C.'s stomach. While the semen stain on the pink and white blanket was not Morningstar's, "[i]t is the province of the fact-finder, not this court, to weigh the probative value of the evidence and resolve any conflicts in the testimony." *McKenzie*, 326 F.3d at 727. Further, "[i]n assessing the sufficiency of the evidence, 'we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.' " *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir.1994)).

After viewing the evidence in the light most favorable to the Commonwealth, the Court concludes that a rational trier of fact could have found beyond a reasonable doubt that Morningstar engaged in sexual intercourse with C.C. and, therefore, that he was guilty of second-degree rape. The evidence in the record thus was constitutionally sufficient to support Morningstar's conviction, and he is not entitled to habeas relief.

## V. EVIDENTIARY HEARING

Section 2254(e)(2) of AEDPA sets forth certain requirements for obtaining an evidentiary hearing in a habeas proceeding where a petitioner has "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2) (requiring a petitioner to show that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable or a factual predicate that could not have been previously discovered through the exercise of due diligence). The Supreme Court has held that "failed" within the meaning of § 2254(e)(2) refers to "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Here, Morningstar sought to develop evidence during his trial regarding the claims he raises in his Petition by attempting to introduce into evidence testimony and letters regarding C.C.'s pregnancy fears and her other accusations of rape, in addition to requesting oral argument on his appeal to the Kentucky Supreme Court, R. 9, Br. for Appellant at Intro. As a result, he has demonstrated the diligence necessary to escape application of § 2254(e)(2)'s evidentiary hearing prerequisites. *See Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir.2007) (en banc) ("Here, Getsy sought to develop evidence regarding his judicial-bias claim both at trial and in his postconviction proceedings in state court. He has thus demonstrated diligence in accordance with § 2254(e)(2).")

Though Morningstar overcomes the initial statutory hurdle to obtaining a hearing, "the fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one." *Bowling v.*

*Parker*, 344 F.3d 487, 512 (6th Cir.2003). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). Furthermore, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro*, 127 S.Ct. at 1940.

In this case, no evidentiary hearing is required. Morningstar argues that the trial court violated his constitutional right to confront adverse witnesses by limiting cross-examination of C.C. and that it erred by not allowing into evidence a letter written by C.C. in which she accused other men of molesting her. The relevant facts required to address these issues can be determined from the record. While Morningstar argues that the record is not complete without C.C.'s letter accusing other men of molesting her, testimony from witnesses that would have established his innocence, and testimony from expert witnesses regarding C.C.'s psychology and the lack of forensic evidence, R. 18 at 1–2, these facts are not necessary to the Court's disposition of the issues presented by his Petition or his objections to the Report and Recommendation. Moreover, as discussed above, Morningstar's claims are insufficient to support a claim for habeas relief. Thus, no additional factual inquiry is needed, and the Court agrees with the Judge Atkins that Morningstar is not entitled to an evidentiary hearing.

## VI. CERTIFICATE OF APPEALABILITY

Finally, the Court also finds that a certificate of appealability should not issue in

this case on any of Morningstar's claims. To be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Here, Morningstar's claims plainly fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

## VII. CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

1.  United States Magistrate Judge Edward B. Atkins's Report and Recommendation, R. 16, is **ADOPTED.**

2.  Morningstar's objections, R. 18 & 19, to the Magistrate Judge's Report and Recommendation are **OVERRULED.**

3.  Morningstar's Petition for a Writ of Habeas Corpus is **DENIED.**

4.  The Court recommends that a Certificate of Appealability not issue on any claim raised by Morningstar in his Petition. *See* 28 U.S.C. § 2253(c).

5.  A separate judgement will be entered contemporaneously with this Memorandum Opinion and Order.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

EDWARD B. ATKINS, United States Magistrate Judge.

### I. INTRODUCTION

Petitioner, Jeffrey A. Morningstar, was convicted in Pike Circuit Court of four counts of second-degree rape, and was sentenced to twenty (20) years imprisonment. The Petitioner's conviction was unanimously upheld on appeal by the Kentucky Supreme Court in an unpublished opinion. Currently incarcerated at the Northpoint Training Center in Burgin, Kentucky, the Petitioner has challenged his conviction by filing, pro se, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [R. 1].

The parties have fully briefed the relevant issues and the petition for writ of habeas corpus is now ripe for review. Consistent with local practice, this matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(B)(1)(B). For the reasons stated herein, the undersigned recommends that Jeffrey Morningstar's petition for writ of habeas corpus be denied.

### II. PROCEDURAL BACKGROUND

The Petitioner was indicted by the Pike Circuit Court Grand Jury on four counts of Second Degree Rape, a violation of KRS § 510.050. The charges were based on the Petitioner engaging in sexual intercourse with a victim, identified as "C.C.", who was under fourteen years of age. [R. 1, Exh. p. 4, "Pike Circuit Indictment 03–CR–00038"]. The victim and her mother had moved in with Petitioner when C.C. was only twelve years old. C.C. alleged that in June and July of 2002, the Petitioner raped her repeatedly in their home, and once in the back of his vehicle, a Nissan Pathfinder. C.C. eventually disclosed the rapes to her aunt, who contacted the Kentucky State Police. *Morningstar v. Commonwealth,* 2007 WL 189020 (Ky.2007) [hereinafter *"Morningstar I "*]. Specific factual details concerning the Petitioner's argument will be developed in Section VI, *infra.*

Petitioner pled not guilty to the charges, and was tried before a jury in Pike Circuit

Court case number 03–CR–38. The jury found Petitioner guilty on all four counts. In accordance with the jury's recommendation, Judge Steven D. Combs sentenced Petitioner to five (5) years on each of the four counts. The sentences were ordered to run consecutively for a total of twenty (20) years. [R. 1, Exh. p. 1–3].

Following his conviction, Petitioner appealed to the Kentucky Supreme Court, which affirmed his conviction in a unanimous, unpublished opinion. *Morningstar I.* The Petitioner raised two issues in his appeal to the Kentucky Supreme Court:

(1) that the trial court violated his constitutional right to confront adverse witnesses by improperly applying KRE 412; and (2) that the trial court erred in not allowing into evidence a letter written by the victim in which she accused other men of molesting her.

*Id.* On the first issue, the court held that the trial court had not abused its discretion regarding the application of KRE 412, and that the Petitioner's constitutional rights had not been violated. The court found that the second issue had not been properly preserved for appeal, nonetheless, the court noted that it was without merit. *Id.* at *5–6.

On May 11, 2007, the Petitioner, acting pro se, filed a Petition for Writ of Habeas Corpus in the Federal District Court for the Eastern District of Kentucky. [R. 1]. In his petition, he raises the same issues as in his direct appeal; specifically, he asserts the following errors:

Ground one: The trial judge violated the [Petitioner's] constitutional right to confront adverse witnesses by improperly applying KRE 412[and]

Ground two: The trial judge erred in not allowing the admittance of a letter in which the victim accused other men of molesting and raping her

[R. 1 at 6–7]. The Commonwealth, through counsel, filed an answer, [R. 9], to which the Petitioner filed his reply [R. 12]. The matter is, therefore, ripe for review.

### III. EVIDENTIARY HEARING

■ On the same day he filed his petition, the Petitioner filed a Motion for Evidentiary Hearing [R. 2], which was denied by the Court. [R. 4]. The Petitioner subsequently filed a renewed motion [R. 13], which was also denied. [R. 15]. Evidentiary hearings are not required by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), which controls the present action. *Vroman v. Brigano,* 346 F.3d 598 (6th Cir.2003). A petitioner is entitled to a hearing where he "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker,* 266 F.3d 442, 459 (6th Cir.2001).

In the present case, an evidentiary hearing was neither mandated by the statute nor required by the facts. The Petitioner failed to show that there were any relevant factual disputes, or that any relevant facts would be developed through an evidentiary hearing. The issues are fully presented by the record itself, and can be accurately resolved by reference to the record alone.

### IV. EXHAUSTION

■ As an initial matter, it should be noted that the Kentucky Supreme Court relied on procedural grounds to dispose of Petitioner's second claim, which was based on an alleged misapplication of Kentucky evidence law. *Morningstar I,* at *5. Whenever a state court disposes of a claim due to failure to preserve an issue for appeal, it raises the possibility of procedural default; however, procedural default is "an affirmative defense that may be

waived if not asserted." *White v. Mitchell,* 431 F.3d 517, 524 (6th Cir.2005). The state has chosen not to raise any issues of procedural default, and the Supreme Court has held that federal courts are not required to resolve a procedural default issue prior to ruling on the merits. *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997), *cited with approval in Hudson v. Jones,* 351 F.3d 212, 215–16 (6th Cir.2003). Therefore, the Court will proceed with the issues raised by the parties.

A state prisoner must ordinarily exhaust all available state remedies prior to seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b), (c). The Petitioner bears the burden of proving that he exhausted his state remedies. *Caver v. Straub,* 349 F.3d 340 (6th Cir.2003). The exhaustion requirement will be satisfied where a petitioner has given the highest state court a "full and fair opportunity to rule on the petitioner's claims." *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). The Sixth Circuit has listed four actions that are significant in deciding whether a petitioner has properly presented his claims to the state courts:

(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt,* 395 F.3d 602, 613 (6th Cir.2005). It is essential that the claims are presented "as constitutional issues, not as issues of state law." *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir.1987). If the case is merely framed as raising issues of state law, the state courts are deprived of a full and fair opportunity to review federal constitutional infirmities in the conviction. Accordingly, the Petitioner's claims will be examined in turn to determine whether he complied with the exhaustion requirement by "fairly presenting" his federal claims to the state courts.

The Petitioner clearly presented his Confrontation Clause argument to the Kentucky Supreme Court, and the court ruled against him on the issue. *Morningstar I,* at *2–5. The Respondent concedes, [R. 9 at 27], and this Court agrees, that Petitioner has exhausted his state remedies regarding his Sixth Amendment argument.

The Petitioner has not exhausted his state remedies with regard to his second argument, which centers on the admission of a letter in which the victim falsely accused three men of molesting her. The argument regarding the letter that Petitioner presented to the Kentucky Supreme Court was based entirely on state evidentiary law. The exhaustion requirement is not satisfied merely because the two claims are based on the same facts. Exhaustion will be satisfied if there is merely a "variation in legal theory [but will not be satisfied if there is] a different legal claim." *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir.1987) (internal citations omitted). Therefore, under the analysis set forth in *Prather,* the exhaustion requirement will not be satisfied if the Petitioner is asserting a claim that is entirely different than the one asserted before the state court.

Applying this analysis to the present case, Petitioner's present argument regarding the failure to admit the evidence is a totally different claim than the one he presented in the state courts. His argument before the Kentucky Supreme Court was based entirely on an alleged violation of KRE 404. An examination of the Petitioner's brief before the Kentucky Su-

preme Court [R. 9, App. 1a–1c], as well as the opinion of that court in *Morningstar I* shows no mention of the federal constitutional issues now presented. Rather, the Petitioner simply asserted a violation of state evidentiary law, with no corresponding federal constitutional violation.

The Petitioner's failure to exhaust the state remedies for his second claim would normally result in a so-called "mixed" petition, which would be subject to dismissal. However, a federal court can choose to rule on the merits of a non-exhausted claim if it falls within certain exceptions. Specifically, Congress permits a court to consider mixed petitions on the merits when "the court determines that the petition must be denied in its entirety." *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir.2000); *see also*, 28 U.S.C. § 2254(b). The Sixth Circuit has approved of ruling on the merits of an unexhausted claim where Petitioner's claim lacks merit, and "any resort to the state court would amount to a mere futility." *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir.2001); *see also*, *Hoxsie v. Kerby*, 108 F.3d, 1239, 1243 (10th Cir.1997) (district court may deny unexhausted claim rather than requiring "useless litigation" in the state courts).

A primary concern that dominates federal review of state court decisions is the need to respect the independence of state courts, and the finality of their judgments. The hesitancy of federal courts to interfere with state court judgments is magnified when the primary issues involve a state court's interpretations of state law. This concern for federalism is not implicated when the habeas petition is one that should be dismissed in its entirety. When petitions contain only unsuccessful arguments, the goals of efficiency and the preservation of both state and federal judicial resources becomes paramount: "[b]ecause [Petitioner's] petition is so plainly meritless, ad-

dressing the merits of his claim will be efficient and will not offend federal-state comity. Efficiency includes bringing criminal litigation to a final conclusion." *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir.1987).

This Court finds that the present case falls within the 28 U.S.C. § 2254(b) exception to the "mixed" petition rule because, as discussed *infra*, none of Petitioner's claims provide a basis for federal habeas relief. The Court will, therefore, proceed to rule on the merits of Petitioner's claims.

## V. STANDARD OF REVIEW

The Petitioner brings this action without the benefit of counsel. A pro se petitioner's pleadings are held to a less stringent standard than pleadings drafted by attorneys. *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir.2006). This Court has, therefore, liberally construed the Petitioner's pleadings, in order to determine whether his pleadings "encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir.1985).

AEDPA governs cases where an individual petitions for a writ of habeas corpus based on a conviction in state court. It provides that a writ of habeas corpus:

> ... on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determina-

tion of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The system set forth in AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693–94, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

Under § 2254(d)(1), this Court may grant a writ of habeas corpus under either the "contrary to" or "unreasonable application" clauses. In order to be "contrary to" federal law, the state court result must be "substantially different" from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision may also be "contrary to" Federal law "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406, 120 S.Ct. 1495. A writ may be granted under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. When determining whether a state court's decision was reasonable, the courts use an objective standard. *Gillard v. Mitchell,* 445 F.3d 883 (6th Cir.2006), *citing Williams* at 409–11, 120 S.Ct. 1495.

AEDPA also provides the relevant standard of review for factual determinations made by state courts:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). In addition to being entitled to a presumption of correctness, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]" *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VI. ANALYSIS

### A. Confrontation Clause

The Petitioner's first argument is that the trial court violated his Sixth Amendment right to confront adverse witnesses by limiting the scope of his cross-examination of the victim. Specifically, the Petitioner claims his rights under the Confrontation Clause were violated when the trial judge did not admit into evidence letters pertaining to the victim's pregnancy, and "in not allowing any questions to C.C. about other sexual acts concerning the other 'foreign' semen found on the blanket marked Exhibit 1." [R. 1, Memorandum in Support, at 6–7].[1]

---

1. The argument regarding the semen found on Exhibit 1 was not made on Petitioner's direct appeal, and was not addressed by the Kentucky Supreme Court in *Morningstar I.* The Petitioner cites to the record where his attorney mentioned this evidence outside the presence of the jury; however, his attorney did not attempt to ask the victim any questions regarding the evidence, neither did he seek a ruling from the trial judge on the issue, nor did he question the victim about it on avowal. [Tape 4, 8–24–2005, 4:09:55–4:20:40

The Petitioner's confrontation claim revolves around the testimony of the victim. On direct examination, the prosecution asked her whether she was concerned about getting pregnant as a result of the rapes, to which she responded that she was. [Tape 3, 8–23–2005, 10:27:10 a.m.]. On cross-examination, defense counsel's first question was, "You say you were worried about getting pregnant?" to which the victim responded, "Yes, sir." Defense counsel then asked, "In fact, you did get pregnant, did you not?" Before the victim could respond, the Commonwealth objected to the question. [*Id.,* 11:37:50 a.m.]. Defense counsel explained that he had a letter written by C.C. in which she claimed she was pregnant; counsel argued that his line of questioning concerning the letter and the pregnancy were permissible methods of impeaching the witness. The prosecution argued that questioning the victim regarding a pregnancy that occurred after the rapes had concluded would violate KRE 412, Kentucky's "Rape Shield" law. They also strenuously objected to defense counsel's failure to follow the specific procedures set forth in KRE 412 for admitting such evidence. After a lengthy debate the trial court declared a recess to consider the matter further. [*Id.,* 11:38:00 a.m.–12:10:25 p.m.].

After the recess, the trial court ruled that the line of questioning was impermissible under KRE 412. Because the question of pregnancy had been asked in front of the jury, the prosecution advised the court that the parties had agreed on a way to resolve the issue. [*Id.,* 1:24:55–1:27:19 p.m.]. As part of this arrangement, the prosecution made a motion that the letter itself was not to be admitted into evidence, or referred to in front of the jury; defense

counsel did not object to the motion. [*Id.,* 1:28:40–1:30:20; 1:34:10 p.m.]. Defense counsel expressly reserved his right to question the victim about the letter on avowal. [*Id.,* 1:27:37 p.m.].

When the trial resumed, Petitioner's counsel asked the victim, "Have you ever told anyone that you were pregnant?" The witness responded that she had. Petitioner's counsel then asked, "Did you tell [them] it was Mr. Morningstar?" The victim responded that she did not tell anyone that Mr. Morningstar had impregnated her. [*Id.,* 1:34:20–1:34:40 p.m.]. On avowal, the victim testified that any letters she wrote about her fears of being pregnant were written a year or two after she was raped by the Petitioner. She also testified that she wrote that she was afraid she had been impregnated by someone other than the Petitioner, and reiterated that she never told anyone that the Petitioner had impregnated her. [Tape 4, 8–24–2005, 4:09:55–4:20:40 p.m.].

■ The Petitioner alleges that the trial court's decision to forbid questioning about the victim's pregnancy violated his constitutionally-protected right to confront witnesses. U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). However, the Court has never held that this "rigorous testing" can occur in whatever manner, or regarding whatever subject, the defendant may choose. Rather, the Court has repeatedly recognized situations where other legitimate interests limit the nature of the defendant's

p.m.]. There is no basis in the record for this argument, and this Court will not address it further.

ability to confront witnesses. For example, in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court, though it ultimately ruled that the defendant's Sixth Amendment right had been violated, noted that:

> It does not follow [from cited precedent] that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, *trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination* based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id.* at 679, 106 S.Ct. 1431 (emphasis added).

As discussed in Section V, *supra,* the Petitioner must show that the state court's decision regarding the Confrontation Clause was either "contrary to [or an] unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." § 2254(d)(1). Unfortunately, the Supreme Court has not directly addressed the constitutionality of using rape-shield laws in the manner in which they were used in this case, though in *Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), the Supreme Court held that it was not a *per se* violation of the Confrontation Clause to severely limit cross-examination because the defendant failed to comply with notice rules set forth in Michigan's rape-shield law.

When the Supreme Court has not directly addressed an issue, a court reviewing a habeas petition "may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law." *Smith v. Stegall,* 385 F.3d 993, 998 (6th Cir.2004). However, AEDPA permits references to lower federal court decisions to "determine whether a legal principle or right had been clearly established by the Supreme Court." *Id., citing Hill v. Hofbauer,* 337 F.3d 706, 716 (6th Cir.2003). In *Boggs v. Collins,* 226 F.3d 728 (6th Cir.2000), a panel of the Sixth Circuit was faced with the following issue: "was the Constitution violated when [the defendant] was precluded from cross-examining [the victim] on an alleged prior accusation of rape?" *Id.* at 736. The panel answered the question by saying: *"[b]ound by clear Supreme Court precedent,* we are constrained to hold that it was not." *Id.* (emphasis added).

The *Boggs* panel examined relevant Supreme Court cases, primarily *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), and determined that the Supreme Court had set forth a rule "that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs,* 226 F.3d at 737. The panel continued:

> Given [the Supreme Court precedents], we must reject Boggs's primary argument because it improperly blurs the precise distinctions drawn in Confrontation Clause jurisprudence. Not having articulated an argument sounding in motive, bias or prejudice, Boggs instead seeks to elevate his purpose—attacking [the victim's] general credibility—into a constitutionally mandated right. *He argues that because [the victim's] credibility is central to his case, the Sixth Amendment requires that he be allowed to cross-examine her on an incident*

*bearing on that credibility. Because this contention goes beyond the clear sweep of the Confrontation Clause traced by Davis and Van Arsdall, we cannot accept it as a ground for habeas relief.*

*Boggs,* at 739 (emphasis added).

Like the arguments expressly rejected in *Boggs,* the Petitioner's arguments, both before the Kentucky Supreme Court and in the present case, have focused on the general character and credibility of the witness, and thus are not entitled to the Sixth Amendment protections he claims. In his reply brief, the Petitioner stated:

> [the letters regarding C.C.'s pregnancy] would have showed, or proven, 1) The victim's propensity to fabricate; 2) The victim's character, or lack thereof; and, 3) The victim's contradictions, which would have raised questions of doubt to any reasonable jury.

[R. 12 at 3]. In order to show a violation of clearly established federal law, the Petitioner was required to make a threshold showing that the precluded testimony was in regards to bias, prejudice, or motive. The Petitioner only claims that he was precluded from cross-examination that focused on the general character and credibility of the witness, while the trial judge ultimately ruled that such cross-examination would violate the interests represented in Kentucky's rape-shield law.

"Even when the core values of the Sixth Amendment are invaded by a denial of cross-examination, the confrontation right may be displaced by competing interests

which, if closely examined, may warrant dispensing with confrontation at trial." *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir.1989) (internal citations and punctuation omitted). The primary purpose of KRE 412 "is to protect alleged victims of sex crimes against unfair and unwarranted assaults on character." Lawson, Robert G., *The Kentucky Evidence Law Handbook* § 2.30[3] (4th ed. 2003). In addition to protecting victims from harassment, these laws are valuable in "encourag[ing] victims to seriously pursue charges against perpetrators of sex crimes," *Id.,* a goal that helps to ensure public safety.[2]

Under the circumstances presented in this case, the denial of cross-examination, intended merely to malign the character of the victim, does not offend the Confrontation Clause, and does not form the basis for issuing a writ of habeas corpus.

### B. Failure to Admit Letter into Evidence

The Petitioner's second argument is that the trial court "erred in not allowing the admittance of a letter, in which the victim accused other men of molesting and raping her." [R. 1, Memorandum in Support, at 11]. The Respondent counters that the defense never moved to admit the letter into evidence, and that, even assuming there was an error, any harm was abated because the "contents were admitted into evidence by way of cross-examination." [R. 9, Memorandum in Opposition at 42–44].

---

**2.** As noted in the published comments to the federal rape-shield law, from which KRE 412 was derived, the goals of rape-shield laws are to

> "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate

sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."

Fed. R. Evid. 412 advisory committee's note.

As part of its case-in-chief, the defense re-called the victim, C.C., to the stand. Defense counsel began by questioning her about whether she had ever been molested by anyone other than the defendant. He then asked her whether she had ever written a letter to Pike Family Court Judge Thompson claiming that she had been molested by anyone other than the defendant, at which point the Commonwealth objected. [Tape 4, 8–24–2005, 1:41:03–1:41:50 p.m.]. During the ensuing bench conference the Commonwealth based its objection on the fact that the letter had not been disclosed to them, to which the defense responded that he was not under an obligation to disclose material that was used for impeachment. The judge dismissed the jury so the issue could be resolved. [Id., 1:42:00–1:47:05 p.m.].

After the jury had been dismissed, the prosecution stated, "we're beyond arguing whether its going to be admissible, because [defense counsel] has already put it in front of the jury." [Id., 1:50:13–1:50:20 p.m.]. The trial judge noted that he was "not inclined to let [the letter] in, just because of the timing of it ... I think something like this we need to go over, needs to be disclosed." [Id., 1:52:31–1:52:45 p.m.]. At the request of the Commonwealth, the judge declared a brief recess to allow the prosecution to review the letter and to talk to the witness. [Id., 1:54:00 p.m.].

When the trial resumed, defense counsel questioned the victim about the contents of the letter, namely, whether she had ever made accusations of molestation against her father, her step-father and one of her uncles. The victim responded that the content of the letter, in which she accused all three men of molesting her, had been composed by her aunt, who wanted C.C. to be removed from her mother's custody.

C.C. testified that she copied the letter in her own handwriting and signed it, but that the accusations were not true. [Id., 2:20:18–2:22:28 p.m.].

During closing arguments, the defense carefully recounted C.C.'s testimony regarding the false allegations contained within the letter; referencing the letter, defense counsel stated, "if she would lie to [Judge Thompson], she would lie to you." [Tape 5, 8–25–2005, 1:40:45–1:43:59 p.m.; see also, 1:49:44–1:49:53 p.m.]. Shortly after beginning deliberations, the jury returned to court and asked to see the letter itself. The trial judge told them that the letter was not in evidence, and ordered them to return to deliberations. [Id., 3:12:13–3:13:20 p.m.].

A federal court reviewing a state conviction must defer to the decision of the state courts regarding the application of state law. The Supreme Court has held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court has long adhered to the position that "a mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (internal quotations and citations omitted). The reason for this rule is simple, "if the contrary were true, then every erroneous decision by a state court on state law would come to this Court as a federal constitutional question." *Id.*

Due to the limited nature of federal habeas review, an erroneous application of state law will only provide the basis for federal habeas relief "under the most unusual circumstances." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir.1990) (en banc).[3]

**3.** An erroneous application of state law will only afford a basis for a writ of habeas corpus

458

In the present case, the trial court did not admit the victim's letter, accusing multiple men of molesting her, into evidence. The Kentucky Supreme Court correctly noted that defense counsel did not "make a motion to admit the letter into evidence or to admit avowal testimony to authenticate the document and tender it to the trial court as an avowal exhibit." *Morningstar I*, at *5. Notwithstanding the failure of defense counsel to properly preserve the issue, this Court agrees with the Kentucky Supreme Court that "defense counsel effectively impeached C.C.'s testimony when he read C.C.'s allegations from the letter into evidence by cross-examination." *Id.* The absence of the letter itself from evidence does not render the proof in the case so insufficient that, viewing the evidence in the light most favorable to the prosecution, "it can be said that no reasonable trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The jury was made completely aware of the letter's contents when defense counsel questioned C.C. about whether she had ever accused three other men of molesting her. [Tape 4, 8–24–2005, 2:20:18–2:22:28 p.m.]. Furthermore, he reviewed this testimony with the jury during his closing argument. [Tape 5, 8–25–2005, 1:40:45–1:43:59 p.m.; 1:49:44–1:49:53 p.m.]. The Petitioner has failed to show that the state court decision was either "contrary to" or an "unreasonable application" of clearly established federal law. § 2254(d)(1). The mere fact that the jurors were not permitted to see the actual letter itself is not the type of highly unusual or extraordinary

error of state law that would compel this Court to issue a writ of habeas corpus.

*VII.  CONCLUSION*

Accordingly, and for the reasons stated above, it is hereby recommended that the petition for writ of habeas corpus [R. 1] be denied and this action be dismissed with prejudice.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F.Supp.2d 737, 749–750 (E.D.Ky.2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir.2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

Signed January 17, 2008.

where the error in application "constitute[s] a fundamental defect which inherently resulted in a complete miscarriage of justice or exceptional circumstances [exist] where the need for the remedy afforded by the writ of habeas corpus is apparent." *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir.2006) (internal citation omitted); *see also Short v. Garrison*, 678 F.2d 364, 369 (4th Cir.1982).